1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

9    MATTHEW LEE ENGLAND,                              NO.  C10-988-MJP-JPD

10                                 Plaintiff,

11        v.                                            REPORT AND
                                                        RECOMMENDATION
12    MICHAEL J. ASTRUE, Commissioner of
13    Social Security,

14                                 Defendant.

15

16         Plaintiff Matthew Lee England appeals the final decision of the Commissioner of the

17   Social Security Administration ("Commissioner") which denied his applications for Disability

18   Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

19   of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

20   administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

21   the Commissioner's decision be REVERSED and REMANDED for further proceedings.

22                          I.    FACTS AND PROCEDURAL HISTORY

23         At the time of the administrative proceeding, Plaintiff was a 47 year-old man with a

24   high school degree and some post-secondary vocational education.  Administrative Record

25   ("AR") at 31-2.  His past work experience includes employment as a construction worker,

26

REPORT AND RECOMMENDATION - 1

1  material handler, fish packer, painter, cleaner and cook helper.  AR at 22.  Plaintiff was last

2  gainfully employed in 2001.  AR at 13.

3       On May 3, 2006, plaintiff filed claims for SSI and DIB payments, alleging an onset

4  date of September 1, 2001.  AR at 170.  Plaintiff asserts that he is disabled due to affective

5  disorder, anxiety-related disorder, personality disorder, and substance abuse disorder.  AR at

6  13.

7       The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 111-

8  14, 119-21.  Plaintiff requested a hearing which took place on March 4, 2009.  AR at 24-89.

9  On September 1, 2009, the ALJ issued an adverse decision.  AR at 7-23.  The ALJ found that

10  plaintiff had impairments that would meet a Listing, and thereby qualify him as disabled, but

11  also found that if he ceased his substance abuse, he would not be disabled.  Accordingly, he

12  was denied benefits.  Plaintiff's administrative appeal of the ALJ's decision was denied by the

13  Appeals Council, AR at 1-4, making the ALJ's ruling the "final decision" of the Commissioner

14  as that term is defined by 42 U.S.C. § 405(g).  Plaintiff filed a timely filed the present action

15  challenging the Commissioner's decision.  Dkt. No.3.

II.       JURISDICTION

17       Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

18  405(g) and 1383(c)(3).

III.       STANDARD OF REVIEW

20       Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

21  social security benefits when the ALJ's findings are based on legal error or not supported by

22  substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

23  Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

24  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

25  *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

26  (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

REPORT AND RECOMMENDATION - 2

1  medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

2  53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

3  whole, it may neither reweigh the evidence nor substitute its judgment for that of the

4  Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

5  susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

6  must be upheld.  *Id.*

7  The Court may direct an award of benefits where "the record has been fully developed

8  and further administrative proceedings would serve no useful purpose."  *McCartey v.*

9  *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

10  (9th Cir. 1996)).  The Court may find that this occurs when:

11     (1)  the ALJ has failed to provide legally sufficient reasons for rejecting the
       claimant's evidence; (2)  there are no outstanding issues that must be resolved
12     before a determination of disability can be made; and (3)  it is clear from the
       record that the ALJ would be required to find the claimant disabled if he
13     considered the claimant's evidence.

14

15  *Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

16  erroneously rejected evidence may be credited when all three elements are met).

17                          IV.     EVALUATING DISABILITY

18  As the claimant, Mr. England bears the burden of proving that he is disabled within the

19  meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

20  Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in

21  any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

22  expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

23  423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are

24  of such severity that he is unable to do his previous work, and cannot, considering his age,

25  education, and work experience, engage in any other substantial gainful activity existing in the

26

REPORT AND RECOMMENDATION - 3

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

1 then the burden shifts to the Commissioner at step five to show that the claimant can perform

2 other work that exists in significant numbers in the national economy, taking into consideration

3 the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g),

4 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable

5 to perform other work, then the claimant is found disabled.

6      In cases such as this, if it is found that claimant is disabled and there is medical

7 evidence of a substance abuse disorder, then the ALJ is to conduct a further analysis to

8 determine if the substance use disorder is a contributing factor material to the determination of

9 disability.  In doing so, the ALJ must evaluate the extent to which the claimant's mental and

10 physical limitations would remain if the claimant stopped the substance abuse.  If the

11 remaining limitations would not be disabling, the substance use disorder is a contributing

12 factor material to the determination of disability, and under this analysis, the claimant would

13 not be considered disabled.  20 C.F.R. §§ 404.1535 and 416.935.

## V.      DECISION BELOW

15      On September 1, 2009, the ALJ issued a decision finding the following:

16
17     1.     The claimant met the insured status requirements of the Social Security act through September 30, 2006.

18
19     2.     The claimant has not engaged in substantial gainful activity since September 1, 2001, the alleged onset date.

20
21     3.     The claimant has the following severe impairments: affective disorder, anxiety-related disorder, personality disorder, and substance abuse disorder.

22
23     4.     The claimant's impairments, including the substance use disorder, meet Listings 12.04 and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1.

24
25
26     5.     If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

REPORT AND RECOMMENDATION - 5

6.     If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Appendix 1.

7.     If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to performing simple and routine tasks.  The claimant cannot interact with the public and is limited to superficial contact with co-workers.

8.     If the claimant stopped the substance use, the claimant would be able to perform past relevant work as construction worker, material handler, fish packer, painter, cleaner, and cook helper.  These jobs do not require the performance of work-related activities precluded by the residual functional capacity the claimant would have if he stopped the substance use.

9.     Because the claimant would not be disabled if he stopped the substance use, the claimant's substance use disorder is a contributing factor material to the determination of disability.  Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

AR at 13-23.

## VI.     ISSUES ON APPEAL

As noted above, plaintiff was found to be disabled, but the ALJ also found that he would not be if he ceased engaging in substance abuse  The principal issues on appeal are:

1.     Did the ALJ err by failing to include limitations interacting appropriately with supervisors and tolerating supervision in the RFC assessment?

2.     Did the ALJ err in finding plaintiff could perform past work?

3.     Did the ALJ properly reject testimony from plaintiff and lay witnesses regarding the impact of his moods and irritability?

Dkt. No. 15 at 5, 8, 10.

REPORT AND RECOMMENDATION - 6

1

2

3

## VII.    DISCUSSION

A.    <u>The ALJ May Have Erred When She Failed to Include Limitations in Interacting Appropriately with Supervisors and Tolerating Supervision in her RFC Assessment</u>

4

5

6

7

8

Recognizing some of plaintiff's mental limitations, the RFC found by the ALJ included

no contact with the public, and only limited contact with co-workers.  Plaintiff does not

challenge these restrictions.  However, he argues the ALJ erred by failing to include limitations

in interacting with supervisors and tolerating supervision.  Plaintiff bases his argument on the

testimony given by the medical expert ("ME") Kenneth Asher, Ph.D.

9

10

11

12

13

The ALJ concluded that Dr. Asher's testimony was "consistent with the record as a

whole."  AR at 16, 21.  At other times, the ALJ assigned "significant weight" to Dr. Asher's

opinions.  *See e.g.*, AR at 16 (significant weight to opinion regarding "paragraph B" criteria),

AR at 21 (significant weight to testimony about difficulty in assessing claimant's functioning

absent exacerbating effects of alcohol).  The ALJ summarized Dr. Asher's opinions as follows:

14

15

16

17

18

19

20

21

> The undersigned assigns significant weight to Dr. Asher.  He opined that it was difficult to assess the claimant's functioning absent the exacerbating effects of the alcohol.  Though the claimant alleged a period of sobriety while residing at the Anderson sober house from approximately November 2005 through April/May 2006, Dr. Asher opined this period was not sufficient to extrapolate a clear objective view of the claimant's mental functioning when not influence[d] by alcohol.  This was because of the extreme impact of many years of alcohol use.  Dr. Asher opined that this brief period was only the beginning of any remission process.  As such, the undersigned finds that any evidence regarding the claimant's functioning during this period of time, i.e., the emergency record from April 2006 indicating he threatened housemates and Mr. Hall and the claimant's testimony of the manic episodes and "black-outs," are not useful to the analysis of claimant's mental functioning while sober.

22

23

24

25

26

> In addition, Dr. Asher concluded that regardless of alcohol use, *the claimant was markedly impaired in ability to interact appropriately with the general public, and accept instructions and respond appropriately to criticism from supervisors.  This is consistent with the claimant's residual functioning capacity as stated above, i.e. limiting the claimant from social interaction.*  The undersigned also finds persuasive Dr. Asher's opinion that the claimant was moderately limited in ability to carry out detailed instruction, and thus the

REPORT AND RECOMMENDATION - 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

undersigned finds the claimant is limited to simple repetitive tasks.  The
undersigned finds Dr. Asher's opinion as consistent with the record as a whole.

AR at 21 (emphasis added, record citation omitted).  The issue of being able to work with

supervisors is relevant and material to the inquiry of disability, yet the extent of limitations, if

any, were not specifically included in the RFC determination.  A vocational expert ("VE") was

called to testify.  The ALJ posed the following hypothetical to the VE.

> Q:      At this point then, what we will do is move to the next hypothetical
> question noting that there are two jobs, the solderer and assemble, for sedentary.
> Then looking at the next hypothetical person will be any of the prior
> hypothetical individuals.  In addition, this person will have angry outbursts with
> supervisors and a loss of concentration 20 percent of the work day or work
> week.  In your opinion, what impact would that have on the ability to sustain
> work?

> A:      Well, if this individual is going to have angry outbursts at any time, this
> person would most likely be terminated on the spot and escorted off the
> property, so this individual would not be able to maintain employment.

AR at 103.

Although the RFC was designed to minimize plaintiff's contact with the public and co-

workers, it is not self-evident the RFC incorporates any limitations regarding plaintiff's ability

to deal with supervisors or supervision in general.  Accordingly, this matter must be reversed

and remanded for further proceedings regarding the issue of plaintiff's abilities to deal with

supervisors and to be supervised.  This also requires the ALJ to reevaluate if these limitations,

if found, would have an impact upon plaintiff's ability to perform his past work.

B.      The ALJ Erred/Did Not Err in Her Treatment and Evaluation of the Plaintiff's
Testimony and that of Robert Hall

1.      *Standards for Reviewing Credibility Determinations*

A determination of whether to accept a claimant's subjective symptom testimony

requires a two step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273,

REPORT AND RECOMMENDATION - 8

1    1281 (9th Cir. 1996); SSR 96-7p (1996).[2]  First, the ALJ must determine whether there is a

2    medically determinable impairment that reasonably could be expected to cause the claimant's

3    symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.

4    Once a claimant produces medical evidence of an underlying impairment, the ALJ may not

5    discredit the claimant's testimony as to the severity of symptoms solely because they are

6    unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir.

7    1991) (en banc); *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) (internal citations

8    omitted).  Absent affirmative evidence showing that the claimant is malingering, the ALJ must

9    provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d

10   at 1284; *Reddick*, 157 F.3d at 722.

11          When evaluating a claimant's credibility, the ALJ must specifically identify what

12   testimony is not credible and what evidence undermines the claimant's complaints; general

13   findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may

14   consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness,

15   inconsistencies in testimony or between testimony and conduct, daily activities, work record,

16   and testimony from physicians and third parties concerning the nature, severity, and effect of

17   the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec.

18   Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (internal citations omitted).

19          An ALJ may consider lay-witness sources, such as testimony by friends and family

20   members.  20 C.F.R. § 404.1513(d)(4).  Lay-witness testimony as to a claimant's symptoms or

21   as to how an impairment affects claimant's ability to work is competent evidence.  20 C.F.R. §

22   404.1513(e); *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir.1987).  Therefore, this

23

24          [2]  Social Security Rulings do not have the force of law.  Nevertheless, they "constitute
     Social Security Administration interpretations of the statute it administers and of its own

25   regulations," and are binding on SSA adjudicators. 20 C.F.R. § 402.35(b); *Holohan v.
     Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001).  Accordingly, such rulings are given

26   deference by the courts "unless they are plainly erroneous or inconsistent with the Act or
     regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

REPORT AND RECOMMENDATION - 9

1   testimony cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19

2   (9th Cir. 1993).  If an ALJ wishes to discount the testimony of a lay witness, she must provide

3   reasons germane to each witness for doing so and may not simply categorically discredit the

4   testimony. *Id.*  Identifying inconsistencies between such statements and the record when

5   viewed as a whole is sufficient. *Lewis v. Apfel*, 236 F.3d 503, 510-12 (9th Cir. 2001).

6   *2.     Plaintiff's Testimony*

7   Plaintiff acknowledges that the ALJ's rejection of at least part of his testimony as non-

8   credible withstands scrutiny under the legal standards set forth above.  However, plaintiff

9   argues that the ALJ erred by failing to include limitations relating to dealing with supervisors

10  and rejecting that portion of his testimony on that subject.  Because this matter is being

11  remanded for consideration of whether plaintiff's RFC must be revised to include limitations

12  regarding supervisors and supervision, the ALJ should also revaluate plaintiff's testimony for

13  this limited purpose.  Apart from this possible error, the ALJ did not err in evaluating

14  plaintiff's credibility.

15  *3.     Robert Hall*

16  Robert Hall was the plaintiff's roommate for approximately 6 months at a clean and

17  sober house, and knew plaintiff for a period of about 3 years as of the time of the

18  administrative hearing.  AR at 63.  Mr. Hall testified that plaintiff could not keep a set

19  schedule, where he would have to be at a given place at a given time or be reliable.  He said he

20  didn't know "if it's the stress, the pressure.  I don't know what it is actually, but I do know that

21  there is no way you're going to get him to do that job no matter what the job is."  AR at 69.

22  The ALJ found Mr. Hall's opinion to be less than fully credible because (1) Mr. Hall

23  was unable to explain the basis for his reasoning and (2) Mr. Hall's principal interactions with

24  plaintiff did not take place while plaintiff was in any period of sustained remission from

25  alcohol use.  AR at 20.  As noted above, the ALJ is responsible for determining credibility,

26  resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.

REPORT AND RECOMMENDATION - 10

1   *Andrews,* 53 F.3d at 1039.  Both reasons proffered by the ALJ to support the non-credibility

2   determination are germane and are supported by the record.  The ALJ did not err.

3                                          VIII.    CONCLUSION

4              For the foregoing reasons, the Court recommends that this case be REVERSED and

5   REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

6   instructions.  A proposed order accompanies this Report and Recommendation.

7              DATED this 7th day of January, 2011.

8

9                                                                JAMES P. DONOHUE
                                                                 United States Magistrate Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26


REPORT AND RECOMMENDATION - 11